Good morning. My name is Charles Kakey. I'm speaking for the appellant, Anice Plikaytis. I will try to reserve about two minutes of my time for rebuttal. Anice Plikaytis is a discharged employee who suffered losses at the hands of her employers, James Roth, and his closely held corporations, Roth Management and Roth Construction. She sued and she won a judgment, awarding her damages in varying amounts to each of the three defendants. This appeal arises from the bankruptcy court's decision to rewrite one sentence of the judgment. That sentence is, the court further finds that James Roth, Roth Construction, and Roth Management are the alter egos of one another and orders the corporate bail to be dismissed. With James Roth and Roth Management in bankruptcy and Roth Construction defunct, Ms. Plikaytis' only hope of ever realizing the significant part of her judgment is for the bankruptcy court to enforce the judgment according to its specific terms. A simple proposition at the heart of this appeal, that the federal courts don't sit in review of the state courts and try to correct their judgments. Federal courts have to follow California law in enforcing the judgment. What does that sentence mean? I've read it, I don't know how many times, and I'm still trying to figure out what it means. It means that each of the three entities or persons named is an alter ego of each of the other ones. That's exactly what it says. So how does that play out? Well, that plays out that James Roth is the alter ego of Roth Construction, and Roth Construction is the alter ego of James Roth. So what does that mean in terms of enforcement of the judgment? That means that each of them are responsible for the liabilities of the other. Okay. Now, up here in the text of the judgment, if I'm not mistaken, the Superior Court judge was pretty clear about joint and several liability. Yes. Right? That's exactly right. The judgment states the joint and several liability of the different defendants. Now, joint and several liability is not the same thing as alter ego liability. Oh, I understand. Joint and several liability is when two different entities share. So let me ask you this. Who are you trying to hold responsible for this judgment? In this instance, Roth Management Corporation. This is the bankruptcy of Roth Management. Ms. Potatus has a claim against Roth Management. Isn't this essentially a reverse corporate veil piercing? That's exactly what it is, yes. Does that recognize in California law? That is not recognized in California law. Why would we read this to allow for a reverse corporate veil piercing? Because to read it any other way than what's written is to review the state court's judgment for error. Well, you're the one who was asserting a collateral estoppel, correct? And isn't the burden on you? The burden on me is to point to the judgment and show where the judgment says what I wanted to say. Well, when you go to that, when I read the underlying motion in the superior court to amend the judgment, to add corporate alter ego, whatever it was the motion specifically provided for, there's nothing in the motion about reverse corporate veil piercing or anything else. Well, there's nothing in the motion about reverse corporate veil piercing. There is some reference to sister corporation, which has to do with the relationship between Roth Construction and Roth Management. But between James Roth and the two corporations, that's reverse corporate veil piercing, and you're right. That is not referred to. But, again, a court, a later court, a different court, is not allowed to look beyond the face of the judgment. But when you're in the world of racial judicata or collateral estoppel, we can look back to see what was actually decided. It's pretty clear. No, I beg to disagree, Your Honor. And the reason I disagree is the rule is a little more fine than that. The rule is if the judgment says what was decided, a later court can go behind it. If there's an ambiguity, if something is missing, then the court can go behind it. Do you disagree with what the California Supreme Court said in Hernandez v. City of Pomona? I don't disagree at all with that. Why not? That's not what they're telling us. In Hernandez, there was a federal judgment on a civil rights claim. And then the plaintiff came and brought another suit in the state court for wrongful death, for negligence. And the question before the California Supreme Court was, did the federal court decide the issues of fact that relate to wrongful death or negligence? And you couldn't tell that just from the verdict that was in the federal court. That was an ambiguity. That was an omission. And that's a situation where you have to go back and look at what happened outside the judgment in the prior instance. But the Aerojet General case is very clear here. When you have a situation where on the face of the judgment, right or wrong, like it or not, there's something there that says what was decided, you cannot go back and look. And you cannot change it on the basis of what was decided, what happened before the judgment was entered. The Aerojet General rule is very clear about this. That's why when we do not have an ambiguous judgment, and this is not ambiguous, there's no recourse to the earlier record. And even if you have recourse to the earlier record, you can't vary what is written in the judgment. That's the whole point here. So, in Hernandez, what caught my eye was the California Supreme Court's language. It says that for purposes of collateral estoppel, an issue was actually litigated in a prior proceeding if it was properly raised, submitted for determination, and determined in that proceeding. Yes. And considering whether these criteria have been met, courts look carefully to the entire record from the prior proceeding, including the pleadings, the evidence, the jury instructions, any special jury findings or verdicts. And that's the rule you follow. Seems pretty straightforward. That's the rule you follow. It doesn't say anything about ambiguity. No, because that wasn't the issue in that case. That wasn't the issue in that case. That was the issue in the Aerojet General case. No, you're just reading stuff into the – you're just reading ambiguity into the Supreme Court's opinion in Hernandez. No, I'm not. There was no ambiguity. There was an omission. There was something that was not covered. The bankruptcy court said this sentence was ambiguous. The district court said, well, no, it's not ambiguous, but really what they're after is reverse corporate veil piercing, and that doctrine is not recognized in California law, so you can't read it that way. Where did you ever get that concept from, reverse veil piercing? Well, I didn't get the concept. That's what is written of the judgment. I wasn't involved in the state court proceedings at all. I take this judgment, see what it says, and say it should be enforced according to its actual words. And the district court was right. This judgment is not ambiguous. You can only read it one way. The district court was wrong that it had the leave to go back and review it. It's the state court judgment that's not subject to review here. It could be reviewed one way or another in the state court, but a sister court doesn't have the power to do that. That's what this is all about. Okay. Do you want to say the remainder of your time for rebuttal? Yeah, I'll say the remainder of my time. Good morning, Your Honor. Jeff Gardner on behalf of Fairmount. I think here the questions that have been asked are on point. I think, first of all, whether or not you do see that the judgment is ambiguous on its face, that the court has the right to go back and take a look to make sure that they are fulfilling the intention of the court when they executed the judgment. So what's ambiguous about the court finds that James Roth, Roth construction, Roth management, are the alter ego of one another, meaning that each one is responsible for the other? Well, I think that's reading into it, first of all, Your Honor, in order to conclude that. Well, because it says, are the alter ego of one another. That term is vague in and of itself, the term one another. But I think to read the judgment, you have to read the entirety of the judgment. And if you look at the top portion of the judgment, which you addressed earlier, you will see that as against James Roth individually, it has $5.610 million as a judgment against him. There is no mention of RMC, which is Roth Management Corporation, or RCC, which is Roth Construction Corporation. So for someone to look at this judgment, it would be confusing in and of itself because you'd look at it and you'd go, okay, I see James Roth owes $5.6 million on his judgment, but I don't see if there is this alter ego. The claim of movements or appellants is that, oh, well, the paragraph came later. But that isn't what one would see when they read the judgment. They would look and they'd say, wait, I don't understand. I see that Roth Management Corporation has a judgment against it for $280,000, but I don't see anything else in here that indicates that. The person or the entity that is rewriting this is the appellant. She is the one that's rewriting the judgment. The judgment at the top issues what the amount of money was to each. If you cannot go by that, then you have to read this paragraph and then you have to ferret out what would be owed in the judgment. And I don't believe that's what you should be reading. You cannot just pick out a phrase or a sentence and then say, there you go. You need to read the judgment in its entirety. And I don't know how you can read this judgment in its entirety and conclude. What's the advantage of this sentence? What is the advantage? I'm not sure I understand your question. Well, what does it do for her? For her? Yes. Well, I don't think it does anything for her, but their claim, the appellant's claim, that what it does is it means that Roth Management Corporation now owes a judgment of $4.2 million, because there were appeals and the numbers changed, now owes a judgment of $4.2 million, whereas they only owed a judgment based on the numbers here of $280,000. So it has a dramatic impact on the bankruptcy of Roth Management Corporation because of the size of her creditor's claim. That's what it does for her. But I don't know how you can read it in a vacuum and take one phrase out and say, well, there you go. You have to read the judgment as a whole. I also agree with the court's questions regarding what the district court did. The district court made it clear that it was not rewriting the judgment, that it was simply trying to determine the intent of it and that it had that right under the Hernandez decision. And so it was the position of the district court, while they said, well, we don't really see the ambiguity, we believe that we should be able to go back or we do have the right to go back and verify what the intent was. With regard to the bankruptcy court, they did find an ambiguity. To be honest, I believe that it is ambiguous, the judgment as a whole. Where did the superior court get this sentence from? Who suggested this sentence? Did the court just write it itself? No. We believe the judgment was drafted by counsel for Ms. Mercatus. So it's just poor drafting? Yes. And Hernandez addresses that, by the way, where it makes the point, and the district court said, here the proposed order was drafted by successful counsel and successful counsel seeks to radically expand the judgment to include a broader definition of corporate veil than currently recognized in California. It would incentivize intentionally sloppy, overbroad, or legally unsupported drafting of proposed orders if unambiguous judgments could not be contested in any circumstance. I believe that is. So when I read the motion, I thought that what they were trying to accomplish was that Roth would be responsible for the debts of Roth Construction Corporation and Roth Management. He is. Clearly is. And it says it in the top of the judgment, where it says, on the $280,000, it says, as against defendants James Roth, Roth Management, Roth Construction, et cetera, $280,000. It says that as against James Roth and Roth Construction jointly and severally, $242,000. But that isn't what appellants are arguing. Yes, I understand. They're arguing something wholly different. We do not dispute the corporate veil was pierced as to Jim Roth or James Roth. In the traditional sense. In the traditional sense, that's correct. And I want to point out just lastly that there was no discussion of the single enterprise theory, which is what appellants are attempting to argue as between Roth Management Corporation and Roth Construction. There was absolutely no mention of that. The case La Palmas, which is the famous case in California that first found single enterprise theory, it was mentioned, but not for the same, and the bankruptcy court addressed that. It wasn't mentioned for the same principle, and nor was that argued or brought in the lower motion. I think to accept appellant's argument is that you would be accepting what is on its face an ambiguous judgment, but even if not ambiguous, as the district court said, they had the right to go behind and make sure that the intention of the judgment was carried out. Thank you. Okay. Okay. There was a few minutes for rebuttal. Yes, Your Honor. First in response to a question that was posed just a minute ago as to who drafted the final judgment. Of course, I wasn't involved in the trial court, but nobody has been able to find anything in the record that suggests that Placidus' counsel drafted that judgment. There's no indication that anybody other than the court itself drafted the final judgment, and it really is irrelevant, I think, because No, that's right. I mean, I was just curious. I mean, it's not the best language that one would This is one of the craziest cases. I seem to get involved in the craziest cases. With respect to Hernandez, again, I would point Whoever put all this together, when I went to law school, they'd get triple Fs. Everything I learned from the great Henry Winthrop Ballantyne He'd go crazy if he read this reverse piercing of the veil. I'm not here to speak in favor of reverse piercing of the veil. I'm speaking in favor of principles of raised judicata that I think are established in the California law. With respect to that, on the Hernandez case, But your arguments just feed right into all the confusion that's going on here. I would like to stand above the confusion. Have you ever diagrammed this case? I don't know if I've diagrammed it, but what I think is we can stand above the confusion by just looking at principles of raised judicata, because they say that we're not going to figure out the craziness that's underneath this in the judgment itself. I will certainly concede that this judgment has caused a lot of heartburn along the way. But the whole point of the raised judicata doctrine is once something is decided, even if you would have trouble agreeing with it, if you were the one who decided it, that's not the issue. The only issue is what was decided. And if we know what was decided, there are ways to change it, but they aren't by doing it in a sister court. And that's what's happening here. That's what the problem is. In the Hernandez case, what it says is the only issue in dispute is whether the issue as to which defendants assert preclusion are identical to the issues decided in the earlier case. That's not shown on the face of the decision. That's why they had to go back. The Arrowjet general case is just very clear on this point. It says, whatever the validity of Arrowjet's objection, the breadth of the transport judgment, and that's what we're talking about, the breadth of the judgment, the time for Arrowjet to object was before the judgment became final. Having elected not to pursue an appeal over the scope of that judgment, Arrowjet may not now seek to mount a collateral attack. Okay. Thank you. Thank you, counsel. The matter is submitted.
judges: Pregerson, Noonan, Paez